D. Blanche Struble *v.* Elkhart Co. Park & Recreation Bd.

[No. 271S53. Filed December 1, 1971.]

*Kizer and Neu,* of Plymouth, for appellant.

*George R. Duffin,* of Goshen, for appellee.

Hunter, J.—This case involves a condemnation of real estate in Elkhart County, Indiana, by the Elkhart County Park and Recreation Board against the appellant-defendant. The complaint for eminent domain was filed on September 30, 1970, and on October 16, 1970, appellant filed objections to the taking of the property. On December 8, 1970, a hearing was held in Elkhart Superior Court Number Two concerning said objections, and both parties filed briefs with the trial court. On December 29, 1970, the trial court overruled the objections

of appellant by written opinion. On January 25, 1971, the trial court appointed appraisers. Upon the overruling of appellant's objections and the appointment of appraisers appeal was taken pursuant to IC 1971, 32-11-1-5 (Ind. Ann. Stat. § 3-1705 [1968 Repl.]). The pertinent portion of this statute reads:

"Any defendant may object to such proceedings on the grounds that the court has no jurisdiction either of the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, or for any other reason disclosed in the complaint or set up in such objections. Such objections shall be in writing, separately stated and numbered, and shall be filed not later than the first appearance of such defendant; and no pleadings other than the complaint and such statement or objections shall be allowed in such cause, except the answer provided for in section eight of this act: Provided, That amendments to pleadings may be made upon leave of court. If any such objection shall be sustained, the plaintiff may amend his complaint or may appeal to the Supreme or Appellate Court from such decision, as and in the manner that appeals are taken from final judgments in civil actions, of which appeal all the parties shall take notice and by which they shall be bound. But if such objections are overruled, the court or judge shall appoint appraisers as provided for in this act; and from such interlocutory order overruling such objections and appointing appraisers, such defendants, or any of them, may appeal to the Supreme or Appellate Court from such decision as and in the manner that appeals are taken from final judgments in civil actions, . . ."

This Court has jurisdiction of this appeal pursuant to IC 1971, 33-3-2-7 (Ind. Ann. Stat. § 4-214 [1960 Repl.]), allowing appeals from condemnation proceedings for appropriation of lands for public use to be taken directly to the Supreme Court of Indiana.

The only issue for review is whether the Elkhart County Park & Recreation Board must follow certain procedures laid down in IC 1971, 19-7-4-39 (Ind. Ann. Stat. § 48-5855 [1970 Supp.]). The statute reads as follows:

"Whenever said board shall deem it advisable to acquire land for any of the purposes mentioned in this act, either by purchase or appropriation, and in conjunction therewith, to proceed with any work of construction or improvement by this act authorized, or to acquire such property without, at the time, proceeding with any work of improvement or construction, or to proceed with such work of improvement or construction when the property used in connection therewith has been already secured by purchase or otherwise, it shall adopt a resolution declaring said purpose, describing the lands so to be acquired and the manner thereof, and, in case of appropriation, such other lands as may be injuriously affected thereby, or describing the lands already acquired and intended to be used in connection with the proposed work of construction, and in case improvement of said lands or any work of construction is provided for in said resolution, shall also cause complete and detailed plans and specifications and an estimate of the cost of the proposed work to be prepared by its engineer selected to do such work, which resolution shall be open to inspection by all persons interested in or affected by the appropriation of such lands or the construction of such work. Upon the adoption of such resolution, said board shall cause notice of the adoption and purport thereof, and, in case any improvement or construction is provided for in said resolution, of the fact that such plans, specifications and estimates have been prepared and can thus be inspected, to be published in at least two (2) newspapers of general circulation in the district and printed and published in the county in which the district is located, or if there be only one (1) newspaper, then by publication in said newspaper, once each week for two (2) consecutive weeks, which notice shall name a date, not less than ten (10) days after the date of such last publication, on which said board will receive or hear remonstrances from persons interested in or affected by such proceedings, and when it will determine the public utility and benefit thereof. A like notice shall be sent by mail to the owner of all lands to be appropriated under and by said resolution, and in case any such landowner be a nonresident and his place of residence be known, a like notice shall be mailed to such nonresident owner, but in event such nonresident owner's residence is unknown to said board, then he shall be deemed to have been notified of the pendency of the proceedings by the publication of notice. All persons affected in any manner by said proceedings, including all taxpayers in said park district, shall be deemed and held to be notified of the pendency of such proceedings, and of all subsequent

acts, hearings, adjournments and orders of said board therein by the original notice by publication aforesaid. In said resolution and notice, separate descriptions of each piece or parcel of land shall not be required, but it shall be sufficient description of the property or to be purchased or to be appropriated or damaged, to give a description of the entire tract by metes and bounds, whether the same shall be composed of one (1) or more lots of parcels, and whether owned by one (1) or more persons. When said land or any part thereof is to be acquired by purchase, said resolution shall also state the maximum proposed cost thereof and said board shall have power, at any time prior to the adoption of such resolution, to obtain from the owner or owners of such land an option for the purchase thereof, or may enter into a contract for the purchase thereof, upon such terms and conditions as such board shall deem best, such option or contract to be subject to the final action of said board confirming, modifying or rescinding said resolution, *and subject further to the condition that said land shall be paid for only out of the special fund resulting from the sale of park district bonds* as hereinafter provided: Provided, however, That in case said board shall desire to acquire any lots or parcels of land by purchase, said board shall appoint three (3) freeholders residing in such city who are not interested, directly or indirectly, in any land to be acquired under such resolution or which may be injured or may incur local benefits, to appraise the value thereof, such appraisers to take an oath that they have no interest in the matter and that they will honestly and impartially make such valuation, and they shall thereupon forthwith view such land and consider and determine the true market value thereof at such time, and report such appraisement in writing, which report shall be filed with and become a part of the record of such proceeding, and said board shall have no authority to take any option of said land or enter into any contract to purchase the same at any higher price than the value so named in such report. *The title to any lands to be acquired under and pursuant to said resolution, whether by purchase or appropriation, shall not vest until the same are paid for out of the special fund created by the sale of bonds as provided in this act,* and any indebtedness or obligation of any kind incurred by the board on account of acquisition of any such land, or on account of any construction work, shall be paid out of the funds under the control of said board and shall not be an indebtedness or obligation of any such city or county. At the time fixed for said hearing, or at any time prior thereto, any owner of land to be appropriated under said

resolution or injuriously affected, and also any person own-
ing real or personal property situated within the territorial
boundaries of any such city or county, may file a written
remonstrance with the secretary of said board.

At such hearing, which may be adjourned from time to time,
said board shall hear all persons interested in said proceed-
ings and all such remonstrances as have been filed and, after
considering the same, shall take final action determining the
public utility and benefit of such proposed proceedings, and
confirming, or modifying and confirming, or rescinding, said
resolution, which said final action shall be duly recorded,
and such actions shall be final and conclusive upon all per-
sons whomsoever." (our emphasis)

Appellant asserts the procedures set out in the statute are a
condition precedent to any condemnation suit and must be met
before any condemnation proceedings may commence. It was
stipulated by the parties that the plaintiff has not followed
the procedure established by the statute. The plaintiff's con-
tention was that it need not follow these procedures unless a
bond issue was required to finance the project and the trial
court agreed with this view in its written opinion overruling
the objections.

At first glance it would appear that appellant is correct in
her contention. On the other hand, upon viewing the statute
as a whole and considering the legislative history of this act,
it is clear that the view of the trial court, as expressed in its
studious and thoughtful opinion, must prevail. The original
section 501 of the 1955 Act was under Article V which bore
the title, "Bonds". The section was amended in 1965 without
changing this title, and the section before amendment dealt
exclusively with bonds. In addition there is language within
the present section which reads as follows:

"The title to any lands to be acquired under and pursuant
to said resolution, whether by purchase or appropriation,
shall not vest until the same are paid for out of the special
fund created by the sale of bonds as provided in this Act,
and any indebtedness or obligation of any kind incurred by
the Board on account of acquisition of any such land, or on
account of any construction work, shall be paid out of the

funds under the control of said board and shall not be an indebtedness or obligation of any such city or county."

This language indicates this section is to apply only to the situation where the funds to be obtained for the lands appropriated are acquired via bond issuance.

Also contained in the Act are a list of powers of the board of parks and recreation. IC 1971, 19-7-4-21 (Ind. Ann. Stat. § 48-5852o [1970 Supp.]). The fifth power listed is the right to:

"Exercise the power of eminent domain under the authority of any laws generally made available to municipalities for this purpose."

Significantly, this portion of the act was also amended in 1965. It seems clear that had the legislature intended for the procedures in question to apply to any and all property acquisitions and condemnation proceedings they would have inserted the procedures as a limitation on the general powers of the board and not inserted them under a section dealing exclusively with bonds. Under the powers of eminent domain granted to a municipal corporation, a municipality has the right either to provide for procedures similar to the ones contained in the statute in question, under IC 1971, 18-1-7-1 (Ind. Ann. Stat. § 48-2001 [1963 Repl.]) or, under IC 1971, 18-1-7-2 (Ind. Ann. Stat. § 48-2001a [1963 Repl.]), to proceed according to the general eminent domain statute. This latter section reads as follows:

"Whenever any city or town shall have the power to appropriate or condemn any real or personal property under this act, or whenever any other act provides that proceedings by any city or town for appropriation or condemnation of any real or personal property shall be under and pursuant to this act, the city board exercising such powers or the board of town trustees may in its discretion, in lieu of proceeding under Section 97 [IC 1971, 18-1-7-1] or any other sections of this act, proceed, and effect such appropriation or condemnation, under the provisions of Acts 1905, c. 48, as amended. [IC 1971, 32-11-1]."

Thus, since the board of parks and recreation may exercise the power of eminent domain under any laws generally made available to municipalities, they could proceed according to the procedures set out in the former section or proceed under the general emiment domain statute as provided in the latter section.

Also contained within the powers stated in IC 1971, 19-7-4-21 (Ind. Ann. Stat. § 48-5852o [1970 Supp.]), is the right to:

"Prepare and submit an annual budget in the same manner as other departments of the city or county government . . ."

As to its budget, a park and recreation board is to be treated like any other department of municipal government. It would seem that, as long as their acquisitions were within the bounds of their budget, the only interest of the general public would be the same as it would be for any other department of municipal government, and would not necessitate a hearing for every expenditure of a capital nature. This view is further substantiated by another section of the statute, IC 1971, 19-7-4-23 (Ind. Ann. Stat. § 48-5852q [1970 Supp.]), wherein it is stated,

"The common council or county council as they might determine shall provide the revenues necessary for the operation of the department *or for capital expenditures not provided by the issuance of bonds, . . .*" (our emphasis)

The rights of the individuals directly affected by the taking of any lands would be protected in the same manner as any other defendant in a condemnation suit.

It therefore seems clear from a reading of the whole of the Park and Recreation Law of 1965 that the procedures stated in § 501 of the law are not applicable to every land acquisition by the board but only to those acquisitions in which a bond issue is to be involved. It then follows that these procedures are not a necessary condition precedent to the initiation of a condemnation suit by a park

and recreation board when no bond issue is contemplated, and the trial court was correct in overruling appellant's objections.

Judgment affirmed.

Arterburn, C. J., DeBruler and Givan, JJ., concur; Prentice, J., dissents with opinion.

## DISSENTING OPINION

PRENTICE, J.—I do not agree with the majority opinion herein. It is to be noted that the statute under consideration requires notice not only to the general public but also a special notice to the owner. I can see no reason for giving the owner a special notice if the hearing is to relate only to a proposed bond issue, because in this respect, his position is no different from that of any other taxpayer. I, therefore, conclude that the requirements for notice and hearing relate to the acquisition and expenditure and are for the purpose of inviting remonstrances thereto without regard to the manner of payment. I agree that many of the provisions of this statute would be applicable only with respect to bond issues, but it does not necessarily follow that by reason thereof none of the provisions are applicable otherwise.

I regard I.C. 1971, 19-7-4-21 (5) [Ind. Ann. Stat. § 48-5852o (5)] as a grant of the general power of eminent domain. It does not eliminate the necessity of public notice and hearing imposed by other statutes as a prerequisite to either the exercise of such power or to the expenditure of public funds.

I would reverse the decision of the trial court.

NOTE.—Reported in 275 N. E. 2d 532.